# In the United States Court of Federal Claims

No. 20-1444 C
Filed: November 30, 2022

———————————————————

|  |  |
|---|---|
| RANDON H. DRAPER, | ) |
|  | ) |
|  | ) |
| *Plaintiff*, | ) |
|  | ) |
| v. | ) |
|  | ) |
| THE UNITED STATES, | ) |
|  | ) |
| *Defendant*. | ) |
| ——————————————————— | ) |

*David P. Sheldon*, Law Offices of David P. Sheldon, Washington, D.C., for Plaintiff.

*Brendan D. Jordan*, Trial Attorney, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., with whom were *Brian M. Boynton*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Eric P. Bruskin*, Assistant Director, and *Maj. Hank D. Nguyen*, Personnel and Information Law, United States Air Force, of counsel, for Defendant.

## OPINION AND ORDER

**MEYERS, Judge**.

## I.    Introduction

Plaintiff, Randon Draper, served as a Colonel in the Air Force for approximately seven years. During that time, Draper was punished for viewing inappropriate materials on his Air Force-issued computer. After his punishment, Draper continued to serve for several more years without any conduct issues, and his superiors and colleagues considered his service as a Colonel before and after his misconduct to be exemplary. Because of his punishment, when Draper chose to retire the Air Force required a review of his performance to determine whether he should remain a Colonel in retirement or should retire as a Lieutenant Colonel. The Air Force determined to retire Draper as a Lieutenant Colonel, and Draper brings this action challenging that determination. The decision to demote Draper, however, rests in significant part on a factual premise that is contradicted by the record. Further, it fails to account for contradictory findings by the same ultimate authority. Therefore, the Court remands this matter to the Air Force Board for the Correction of Military Records for it to reconsider whether Draper is entitled to any correction of his military records.

## II.    Background

Randon H. Draper served in the Air Force for over 20 years, from August 1997 until his retirement in March 2018; he served the last seven years as a Colonel.  AR 35, 206.[1]  On April 10, 2015, Draper viewed sexually explicit materials on his government-issued laptop while on duty in violation of Air Force Manual ("AFM") 33-152 ¶ 3.2.3 (June 2012).  AR 257-58.  The Air Force discovered Draper's violation, and as punishment, Draper's commanding officer, Major General Dixie Morrow, proposed Article 15 Nonjudicial Punishment ("NJP") proceedings.  AR 161-62.  Draper accepted these proceedings and, although his attorney advised against it, made a personal appearance before General Morrow.  AR 161.

On May 12, 2015, Draper read a prepared statement to General Morrow and his supervisor, Colonel Marksteiner.  AR 165.  In his statement, Draper admitted to further misconduct that the Air Force was not previously aware of.  *Id.*  In addition to viewing sexually explicit materials on April 10, 2015, Draper admitted to having looked at "similar offensive adult searches on [his] work computer" several days later.  AR 167.

General Morrow found that Draper did violate AFM 33-152 ¶ 3.2.3, and as punishment reprimanded Draper for his conduct and deducted $1,000 of pay per month for two months.  AR 162, 164.  Draper did not receive any additional punishment for the further misconduct he admitted to during the NJP proceeding.  *See id.*

On June 24, 2015, just over a month after Draper's NJP, General Morrow met with special agents from the Air Force Office of Special Investigations ("AFOSI").  AR 193.  The special agents informed her that a review of Draper's Electronically Stored Information and logs of his web use revealed that from January 2014 to December 2014, Draper attempted to view approximately 105 pornographic images, 19 of which he viewed and 94 to which the Air Force IT system blocked his access.  *Id.*  The web logs also revealed that from January 2015 to April 2015, Draper attempted to view 3,177 pornographic images and videos, 888 of which he viewed, while the IT systems blocked his access to 2,289.  AR 193-94.

General Morrow issued Draper a Letter of Reprimand ("LOR") on June 29, 2015, for wilfully misrepresenting facts and leading her to believe during the NJP proceeding that his "misconduct was limited to two episodes in Apr 2015 specifically tied to stressful family circumstances, when in truth and fact, [Draper] had violated AFM 33-152 repeatedly over the course of 15 months."  AR 193-94.  General Morrow wrote: "The evidence clearly demonstrates that your conduct was *not* limited in scope to two days in Apr 2015, resulting from time-specific stressors as you declared.  Instead, it was an ongoing, pattern of misconduct in 2014 and 2015 which you knew about at the time you made your oral presentation and submitted your written response, and when you attempted to mitigate the damage resulting from a referral OPR [Officer Performance Report]."  AR 194 (emphasis in original).  In response to the LOR, Draper admitted that he had "not been fully honest with [Gen. Morrow] or [him]self."  AR 196.  Draper did not challenge the LOR.  The LOR was the only discipline imposed on Draper for the alleged misrepresentation of the facts.  AR 193.  The LOR was placed in Draper's Unfavorable Information File.  AR 197-98.

---

[1] The Administrative Record appears at ECF No. 21-1.

Aside from the NJP (resulting from the initial discovery of viewing sexually explicit materials on Draper's government-issued laptop) and the LOR (for willfully misrepresenting facts), there are no other instances of misconduct in the record.  In May 2016, Draper appeared before a promotion board to be considered for promotion to Brigadier General.  AR 188.  On July 7, 2017, the promotion board rated Draper "promote."  AR 141; *see also* AR 188.

Two years after the NJP, the Article 15 expired from Draper's Officer Selection Record ("OSR") because there were no other violations.  Shortly thereafter, on July 26, 2017, Draper requested the Air Force remove the LOR from his OSR.  AR 189-91.  As part of his request, Draper included a narrative titled "Factual and Legal Errors in the LOR" that contended the allegations in his LOR to be "untrue and unfairly prejudicial."  AR 190.  On July 31, 2017, Major General McMullen[2] directed the removal of the LOR from Draper's OSR.  AR 3.  In doing so, he stated that he "thought [Draper] got beat up for the same issue twice . . . [which is] not in compliance with the spirit of the UCMJ . . . ."  AR 192.

Draper chose to retire from the Air Force effective April 1, 2018.  Because Draper received the Article 15 NJP within four years of his retirement, the Air Force initiated an officer grade determination ("OGD").  AR 169.  The regulations governing an OGD mandate an officer be retired at "the highest grade held satisfactorily as determined by the SecAF [Secretary of the Air Force] or SecAF's delegate."  AFI 36-3203 ¶ 8.2.1[3]; *see also* AR 169.  Thus, the OGD was to determine whether Draper performed satisfactorily as a Colonel and would remain a Colonel in retirement or should retire at a lower grade.  On October 18, 2017, the Air Force notified Draper that it would initiate an OGD because of his May 2015 NJP.  AR 169.  That same day, Draper waived his right to counsel and responded to the OGD notice.  AR 170-84.  One month later, Draper received a letter informing him that the LOR, which had been removed from his OSR earlier that year, would be considered as part of the OGD.  AR 185.  Draper objected that same day to the consideration of the LOR as part of the OGD and provided the same narrative he submitted in support of removing the LOR from his OSR—the document titled "Factual and Legal Errors in the LOR."  AR 190-91.

Mark Teskey, as the SecAF's delegate, requested the recommendation of the Secretary of the Air Force Personnel Council ("SAFPC") regarding Draper's OGD.[4]  On December 5, 2017,

---

[2] In July 2017, Maj. Gen. McMullen was the Deputy Commander, Air Combat Command, Joint Base Langley-Eustis in Virginia.

[3] Both parties make their arguments based on the 2021 version of AFI 36-3203 (which renumbered the relevant provisions in Chapter 7 of the 2015 regulation to Chapter 8—*e.g.*, § 7.6.2.2 is § 8.6.2.2 in the 2021 version) rather than the 2015 version that was in effect at the time of Draper's retirement.  *See* ECF No. 28 at 15 n.7.  It is unclear why this is because the DoD is usually required to apply the version of a regulation in place at the time of a servicemember's retirement.  *See Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005) (recognizing that agency "regulations in effect at the time of [a servicemember's] discharge[], rather than current regulations, guide [the] analysis.").

[4] The SecAF or the SecAF's delegate "will normally seek the review and recommendation of the SAFPC prior to making a determination of satisfactory service," but the ultimate determination is a matter of Secretarial discretion.  AFI 36-3203 ¶ 8.6.

the SAFPC conducted a review as part of the OGD to make a recommendation of whether Draper performed satisfactorily in the grade of Colonel.  AR 243.  The SAFPC reviewed Draper's records and considered "the nature and length of [Draper's] improper conduct, the impact the conduct had on military effectiveness, the quality and length of [Draper's] service in each grade at issue, past cases involving similar conduct, and the recommendations of the officer's chain of command."  AR 262-63 (citing AFI 36-3203 ¶ 7.6.2.2 (Sept. 18, 2015)).  These are the five factors that AFI 36-3203 ¶ 8.6.2.2 requires the SecAF's delegate to consider when performing the OGD.  The SAFPC concluded that although "[v]iewing sexually explicit materials on a government computer is clearly inappropriate and prohibited behavior, . . . [t]here appears to have been little impact on miliary effectiveness . . . [and Draper's] service as a Colonel was otherwise exemplary."  AR 262.  The SAFPC concluded by a 4-1 vote that Draper performed satisfactorily and should retire as a Colonel.  AR 257-64.  The remaining member voted to retire Draper as a Lieutenant Colonel because Draper's conduct was "similar to and lasted twice as long as an officer retired in the lower grade of O-5 in 2014."  AR 244.  This member also "focused on [Draper's] lack of complete honesty and full disclosure, as a JAG officer" in recommending that Draper retire in the grade of Lieutenant Colonel.  *Id.*

Teskey disagreed with the SAFPC and determined Draper did not serve satisfactorily in the grade of Colonel.  According to Teskey, "even a single egregious incident of misconduct can render service in a grade unsatisfactory despite otherwise exemplary service."  AR 246; *see also* AFI 36-3203 ¶ 8.6.2.2.  In making this determination, Teskey considered the length of time and extent of Draper's improper conduct, "the number of images viewed, the number of viewing attempts, [and] the intentional use of the Firefox browser since it allowed less restricted access . . . ."  AR 246.  Teskey also considered "ACC[5] leadership's singular focus on [Draper's] record and good conduct, in contrast with not acknowledging the length of time, the numbers, the lack of forthrightness when confronted, and the intentional willfulness of the misconduct."  *Id.*  Teskey further explained that ACC leadership "downplay[ed] the LOR as unnecessarily adding to the punishment . . . [and did not] address Colonel Draper's minimization, obfuscation, and continued avoidance of accountability."  AR 247.  These omissions led Teskey "to conclude [ACC leadership] must have missed these facts" given their failure to "address the additional misconduct and the lengthly [sic] period of time for the misconduct . . . [as well as] Colonel Draper's lack of candor."  *Id.*  Accordingly, Draper retired as Lieutenant Colonel—the highest permanent grade in which the SecAF determined Draper to have served satisfactorily.  AR 200; *see also* 10 U.S.C. § 1370(a)(1) (requiring commissioned officers to be retired at the highest permanent grade at which they served satisfactorily).

On April 1, 2018, Draper retired in the grade of Lieutenant Colonel.  AR 8.  Less than three weeks later, Draper filed for a correction of his military records asking the Air Force Board for Correction of Military Records ("AFBCMR") to change the grade in which he retired from Lieutenant Colonel to Colonel.  *Id.*  Draper also requested back pay for the difference in pay from the date of his retirement to the date of the action correcting his retiring grade.  *Id.*

Following his retirement, Draper went to the AFBCMR to set aside the OGD arguing Teskey's decision to retire him as a Lieutenant Colonel was arbitrary and capricious.  AR 4-20.

---

[5] The "ACC" is the Air Combat Command.

Specifically, Draper emphasized that Teskey "implies his chain of command was not aware of the details of the misconduct," even though "[a]ll of the senior officers who provided letters of support were aware of the misconduct." AR 5. In a brief analysis, the AFBCMR concluded Draper was "not the victim of an error or injustice" and not entitled to the relief he sought. AR 6. The AFBCMR acknowledged that, while Draper performed as an "exemplary" Colonel, such misconduct giving rise to the NJP and LOR rendered his service as Colonel unsatisfactory. *Id.* The AFBCMR explained Teskey neither acted improperly in considering the LOR, nor exceeded his authority in rejecting the SAFPC's OGD recommendation and, in turn, retiring Draper as a Lieutenant Colonel. AR 4, 6 (citing AFI 36-2608 ¶ 8.3.15.5). Finally, the AFBCMR rejected Draper's arguments that (1) SecAF's failure to provide the AFOSI ROI in connection with his OGD notification resulted in prejudice, (2) Teskey's failure to recuse himself was unjust, and (3) there existed a mental health disorder that warranted liberal consideration (as discussed in the Kurta Memorandum). AR 4, 6.

The Board eventually determined that Draper "did not demonstrate material error or injustice" in his OGD and voted against correcting his records. AR 6-7. Draper filed suit here alleging the AFBCMR acted arbitrarily and capriciously in its decision to not retire him in the grade of Colonel. The question for the Court is whether the AFBCMR acted arbitrarily and capriciously when it did not find error in Teskey's decision to retire Draper in the grade of Lieutenant Colonel.

## III.    Jurisdiction and Legal Standard

### A.    Jurisdiction

The Tucker Act, 28 U.S.C. § 1491(a)(1), gives this Court authority to adjudicate "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." Tucker Act jurisdiction requires "a separate money-mandating statute the violation of which supports a claim for damages against the United States." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997) (noting that this additional requirement is based upon sovereign immunity principles). A money-mandating statute is "*reasonably amenable* to the reading that it mandates a right of recovery in damages." *Fisher v. United States*, 402 F.3d 1167, 1173-74 (Fed. Cir. 2005). The Military Pay Act, 37 U.S.C. § 204, "serves as the money-mandating statute applicable to military personnel claiming damages and ancillary relief for wrongful discharge." *Holley*, 124 F.3d at 1465 ("If the discharge was wrongful the statutory right to pay continues; this right serves as the basis for Tucker Act jurisdiction."). The Military Pay Act affords active-duty members of a uniform service an entitlement "to the basic pay of the pay grade to which assigned or distributed, in accordance with their years of service . . . ." 37 U.S.C. § 204(a)(1).

### B.    Standard of Review of Military Pay Cases

The Court of Federal Claims is generally limited to reviewing the administrative record in military pay cases. *Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006). The Court will not disturb a military correction board's determination unless the plaintiff proves by "cogent and clearly convincing evidence" that the determination "was arbitrary, capricious, contrary to law,

or unsupported by substantial evidence . . . ." *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986) (citations omitted); *see also Metz*, 466 F.3d at 998 (providing that this is the "ordinary standard of review" for this Court when evaluating a military correction board's decision). Although this standard "does not require a reweighing of the evidence," it does require the Court to determine "whether *the conclusion being reviewed* is supported by substantial evidence." *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983) (emphasis in original). After all, it is well established "that courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." *Id.* at 1156; *see also Stine v. United States*, 92 Fed. Cl. 776, 791 (2010) (recognizing that this Court does not serve as a "super correction board" and will not substitute its judgment for that of a military correction board). Where reasonable minds could differ on the same evidence, the AFBCMR's conclusion must be upheld. *Heisig*, 719 F.2d at 1156. Where a corrections board fails to address contradictory evidence, however, or fails to expressly analyze evidence altogether, the board's decision may be arbitrary and capricious. *See Chisholm v. United States*, 41 F. App'x 394, 402 (Fed. Cir. 2002) (finding a correctional board's failure to expressly analyze three contradictory letters arbitrary and capricious); *Quinton v. United States*, 64 Fed. Cl. 118, 126 (2005) (finding the board's decision arbitrary and capricious when the decision was "internally inconsistent and not supported by the administrative record"). Consequently, "military administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs." *Dodson v. Dep't of Army*, 988 F.2d 1199, 1204 (Fed. Cir. 1993) (citation omitted).

### C.     Motion for Judgment on the Administrative Record

A motion for judgment on the administrative record provides an expedited "trial on a paper record, allowing fact-finding" by the Court. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). Unlike a motion for summary judgment, the Court may grant a motion for judgment on the administrative record even if there is a genuine dispute of material fact. *See id.* at 1355-56. In lieu of an evidentiary trial, the Court references the administrative record to resolve any question of fact. *See id.* at 1356. Here, the inquiry is whether the AFBCMR, "given all the disputed and undisputed facts appearing in the record, acted in a manner that complied with the legal standards governing the decision under review." *Williams v. United States*, 116 Fed. Cl. 149, 157 (2014).

## IV.   Discussion

### A.     The AFBCMR's decision to uphold Teskey's OGD was arbitrary and capricious

####      1.    Teskey's rejection of the chain of command recommendation is based on factual assertions contradicted by the record.

The AFBCMR failed to recognize that Teskey makes several assertions about the chain of command recommendations that Draper retire as a Colonel that are plainly contradicted by the record. The SAFPC examined prior similar cases and the majority of the SAFPC concluded that "the distinguishing feature" between OGDs resulting in demotion and those resulting in retirement in grade was "the chain of command recommendations." AR 263. This is further

confirmed by the Staff Judge Advocate for Headquarters Air Combat Command, Joint Base Langley-Eustis, Virginia, who reviewed 24 Air Combat Command OGDs dating back to 2013 and found that the SecAF's delegee followed the chain of command recommendation in every case other than Draper's.  AR 52; *see also id.* at 55 (another Staff Judge Advocate with OGD experience recognizing "deference to the wisdom of the subject's commander . . . .").  While Teskey is free to reject the chain of command's recommendation, he must explain his rejection in a way that is consistent with the record.  He does not.

Draper challenges Teskey's decision as arbitrary and capricious because Teskey asserts that Draper's chain of command "must have 'missed'" the facts about Draper's misconduct spelled out in the LOR.  ECF No. 28 at 27 (quoting AR 247).  Draper is correct.  Every member of Draper's chain of command specifically referenced the LOR and the Article 15 NJP in their letters of support for Draper.  According to Maj. Gen. McMullen:

> I have had the opportunity to review Randon's record as an O-6/Colonel and have had discussions with others about his performance, as well as have reviewed his misconduct leading up to his Article 15 and Letter of Reprimand (LOR) three years ago.  I earlier ordered the removal of the LOR at Randon's request as I believed it unduly added to the punishment he had already received with the Article 15.

AR 48.  Similarly, Maj. Gen. Toth, the Director of Operations of the Headquarters Air Combat Command at Joint Base Langley-Eustis, specifically referenced Draper's Article 15 NJP and LOR is his letter supporting Draper's retiring as a Colonel:

> I am fully aware of the Article 15 and closely tied LOR he received before coming to ACC.  While his misconduct was inappropriate for an officer, it appears to me that Randon put his misconduct behind him and continued to provide exemplary service in grade.  After serving for nearly three years post incident and for over seven years overall in grade, I recommend he retire in his current grade.

AR 49.  Still more Generals and Colonels wrote in support of Draper's retiring as a Colonel despite his Article 15 NJP and LOR.  AR 50-56.  Each of these officers specifically referenced the NJP and the LOR,[6] which specifically documents the purported lack of honesty that Teskey states these officers "must have missed."  AR 246.  One of these reviewers was a Staff Judge Advocate whose duties included reviewing OGD cases and advising Major Air Command leaders on them.  AR 55.  This Staff Judge Advocate "ha[d] supported negative OGD determinations for a single severe act of misconduct," but concluded that "the misconduct in this case simply does not rise to that level."  *Id.*

---

[6] One of these officers referenced Draper's "well documented" misconduct, which the Court interprets as a reference to the NJP and LOR.

Given Draper's chain of command's explicit references to their knowledge of Draper's Article 15 NJP and the LOR, which details the specific conduct Teskey states they "missed," Teskey's assertion that these accomplished officers "must have missed" these facts is contradicted by the record and must be set aside. *E.g.*, *Caddell Construction Co., Inc. v. United States*, 111 Fed. Cl. 49, 79 (2013) (recognizing that agency decision can be set aside for "'offer[ing] an explanation for its decision that runs counter to the evidence before the agency'") (quoting *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 658 (2007)); *Quinton*, 64 Fed. Cl. at 126 (finding an agency decision arbitrary and capricious when the decision was "not supported by the administrative record"). Again, Teskey was free to disagree with these chain of command opinions, but he had to do so on the merits and could not simply declare that Draper's chain of command missed facts when they clearly stated they were aware of those same facts. The AFBCMR cannot ignore the fact that Teskey's decision is contradicted by the record.

The Government attempts to minimize Teskey's unsupported dismissal of the chain of command recommendations because other AFI 36-3203 ¶ 8.6.2.2 factors weighed in favor of retiring Draper as a Lieutenant Colonel. ECF No. 31 at 4. According to the Government, other factors supporting Draper's demotion—namely, the nature and length of the inappropriate conduct, the impact on military effectiveness, and past cases of similar misconduct—all supported Teskey's decision. *Id.* But, as explained above, the chain of command letters were the dispositive factor in the prior similar cases (according to the SAFPC) and were always followed except in Draper's case. AR 263, 52. It is, therefore, impossible to conclude that Teskey's error was harmless as the Government posits.

It is also not clear that the other ¶ 8.6.2.2 factors weighed in favor of retiring Draper as a Lieutenant Colonel. For example, if there is anything in this record indicating that Draper's conduct had *any* impact on military effectiveness, much less that this factor supported demotion, it is well-hidden. The SAFPC concluded that there was "little impact" on military effectiveness because "[t]here is *no evidence* the respondent's subordinates knew of the misconduct or that it was a distraction in his unit." AR 262 (emphasis added). There is also no indication that the SAFPC minority found Draper's misconduct had any impact on military effectiveness. *Id.* Teskey wholly ignored the impact on military effectiveness, so his analysis cannot establish that this factor supported Draper's demotion (if anything it is an acknowledgement that there was no impact). And the chain of command letters lay to rest any notion that Draper's misconduct had any impact on military effectiveness. AR 48-55.

2.    The Air Force must explain its conflicting conclusions about Draper's performance.

Draper argues that the AFBCMR failed to consider the factual incompatibility between the SecAF's conclusion (delegated to the promotion board) that Draper's performance as a Colonel merited a "promote" rating for Draper to Brigadier General and the SecAF's decision (delegated to Teskey) to retire Draper as a Lieutenant Colonel because of unsatisfactory performance. ECF No. 28 at 21-28. Draper argues that the AFBCMR acted arbitrarily in not accounting for this and the fact that neither Draper's commanders nor the Promotion Board required him to show cause for his retention on active duty. *Id.* The Government asserts that it was not "legally inconsistent" or "legally impermissible" for Teskey to determine Draper's

service as Colonel did not merit remaining a Colonel in retirement, and for the Promotion Board to determine Draper's service as Colonel was "consistent with his grade[.]" ECF No. 42 at 18:11-15; ECF No. 34 at 13. While the Government's argument is certainly plausible, "an agency cannot simply adopt inconsistent positions without presenting some reasoned analysis." *Quinton*, 64 Fed. Cl. at 129 (quoting *Huntington Hosp. v. Thompson*, 319 F.3d 74, 79) (2d Cir. 2003); *see Chisolm*, 41 F. App'x at 395 ("Corrections Board acted in an arbitrary and capricious manner in disregarding contrary evidence without analysis"). In effect, the SecAF determined that Draper's performance as Colonel was satisfactory enough to rate him "promote" in his promotion review for possible promotion to Brigadier General. This meant that he (and his performance) was "of the desired quality" for promotion. AFI 36-2501 ¶ 2.1.1; *see also id.* ¶ 2.1 ("A promotion is not a reward for past service; it is an advancement to a higher grade based on past performance and future potential."). Accordingly, the SecAF found Draper sufficiently "qualified for promotion" such that he "should compete on the basis of performance, performance-based potential, and other considerations such as duty history, developmental education, advanced degrees, etc." AFI 36-2406 ¶ 8.1.2.3.3. Yet on the same record, the SecAF determined that Draper did not perform satisfactorily enough as Colonel to retire in grade. These conclusions somewhat conflict and require reasoned analysis and explanation. As the Court stated during argument, "I'm not saying there can't be a difference, but I think [the] difference has to be explained somewhere, somehow." ECF No. 42 at 108:10-12.

3.     The lack of any show cause proceedings does not establish that Draper's performance as Colonel merited retirement in grade.

Draper also makes much of the fact that none of his superiors nor his Promotion Board required him to show cause for retention. ECF No. 28 at 17-26. While the Court agrees that this is a valid consideration during the OGD, the lack of a show cause proceeding cannot insulate Draper from an OGD that results in a retirement as a Lieutenant Colonel. The SAFPC recognized that Draper's command could have taken more significant action against him after his misconduct but did not. AR 263. Instead, Draper's command "continu[ed] to place him in positions of authority and responsibility, and the respondent continued to excel in them." *Id.* This reflected a command confidence in Draper's performance that the SAFPC found compelling. Therefore, the SAFPC majority found no basis to deviate from the chain of command recommendation that Draper retire as a Colonel. *Id.* This conclusion is one that the AFBCMR and/or the SecAF's current delegee will need to confront on reconsideration that Teskey largely avoided in his opinion that the AFBCMR affirmed.

In what appears to be an effort to refute the SAFPC's reasons for following the chain of command, Teskey states that:

> After Col Draper's Article 15 and LOR, he was assigned to ACC/JA as the Chief of Civil Law, with layers of supervision above him. The JAG Corps assigned him to a position where he was given little leadership leeway and restricted supervisory responsibility. This was not a position of significant leadership responsibility and was unlikely to lead to promotion to Brigadier General. The position did allow him to perform his duties and succeed.

AR 247.  It is unclear what Teskey is basing this assessment on, but Teskey's assertion is apparently trying to respond to the SAFPC's conclusion that Draper's command continued to put him in "positions of authority and responsibility."  As to that point, Teskey's assessment appears untethered to the record.  Draper's command refers to him shaping policy, guiding investigations, guiding administrative actions and ethics issues, and commends his supervision of "senior civilians and rated O-5 officers."  AR 49-53.  Indeed, the record indicates that Draper "also served at times as acting [Staff Judge Advocate]."  AR 53.  If the AFBCMR believes these are not positions of responsibility and do not provide a reasoned basis to follow the command recommendation as the SAFPC concluded, it must explain why not.

The Court cannot agree, however, that the lack of any show cause proceedings by Draper's command or Promotion Board necessarily means that Draper should retire in grade. Each of the show cause provisions that Draper relies upon are processes by which the Air Force can separate officers that it believes should not be retained on active duty.  For example, a "show cause" action is initiated when an officer's misconduct rises to such a level that separation from the Air Force should be considered.  AFI 36-3206 ¶ 1.1.  Examples of such misconduct include substandard performance of duty, misconduct, moral or professional dereliction, or when separation is in the interest of national security.  AFI 36-3206, Ch. 1-3.  There is, however, certainly a band of cases where the misconduct does not rise to the level of separation from the Air Force but results in a retirement at a lower rank.  *E.g.*, AR 263 (the SAFPC considering prior cases in which officers were not required to show cause for retention yet retired at a lower rank). Therefore, the fact that none of the various officials or bodies that could have initiated a show cause proceeding did so does not mean that Draper's performance as a Colonel was necessarily satisfactory for OGD purposes.

Then there is Teskey's comment that Draper was not likely to be promoted.  The Government argues that a "'promote' rating is not an indication that [] Draper was likely to be promoted."  ECF No. 31 at 5.  Whether Draper was, in fact, likely to be promoted is immaterial. It is the Promotion Board's determination that Draper performed satisfactorily as a Colonel and is among the best qualified based on his performance to be considered for promotion that is material.  The Government also argues that Draper's "promote" recommendation is akin to "assessments by colleagues" and only represents "one aspect of the OGD."  ECF No. 31 at 4. Not so.  The determination by the Promotion Board is not akin to an assessment by colleagues; it is an assessment by a panel of senior officers acting for the SecAF to determine whether Draper is "of the desired quality" to be a Brigadier General of the Air Force based in part on his performance as a Colonel.  This is not the same thing as a colleague's assessment.

4.    The AFBCMR must clarify which version of AFI 36-3203 is applicable in the instant case.

Finally, Draper faults Teskey for not considering all AFI 36-3203 ¶ 8.6.2.2 factors (*e.g.*, the impact on military effectiveness).  ECF No. 28 at 5.  The resolution of this issue is complicated by the fact that the Government argues before the Court based on the version of AFI 36-3203 in place today that became effective January 29, 2021, after Teskey and the AFBCMR rendered their decisions in this case.  *See* AR 246 (Teskey's rationale memo dated January 3, 2018); AR 7 (the AFBCMR decision dated July 9, 2019).  The version of AFI 36-3203 in effect at the time of Draper's retirement, however, required the *SAFPC*, not Teskey, to consider the

factors listed in ¶ 8.6.2.2 of the current regulation.  AFI 36-3203 ¶ 7.6.2.2 (Sept. 18, 2015).  The SAFPC did so.  AR 257-64.  The Court cannot fault Teskey for not conducting an analysis that the relevant regulation did not explicitly require him to conduct at the time of his decision.  That said, there appears to have been a fair amount of ambiguity in the 2015 version of AFI 36-3203 regarding which entity was supposed to conduct which analyses, so the AFBCMR should clarify both which version of AFI 36-3203 it applied to this case, which is not clear from its decision, and which analyses the SAFPC was required to perform and which Teskey was required to perform.

### B.    Teskey was not required to recuse himself from this matter

Plaintiff argues that Teskey should have recused himself from the OGD process based on 28 U.S.C. § 455.  ECF No. 28 at 33-34.  The Government responds that there is no Air Force rule that required Teskey to recuse himself, that there was no logical reason for Teskey to recuse himself, and that the recusal by one of the SAFPC members has no bearing on whether Teskey should have recused himself.  ECF No. 21 at 18-21.  Plaintiff's argument in favor of recusal is grounded in "the due process principle" of 28 U.S.C. § 455(a) which requires "[a]ny justice, judge, or magistrate judge of the United States [to] disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  Although Draper admits that Teskey was not mandated by Air Force regulations to recuse himself, Draper nonetheless contends that, because Teskey had worked with him in the past, his "professional judgment was flawed" and he "form[ed] preconceived opinions about the matter and bias against [] Draper."  ECF No. 28 at 34.

The Court cannot agree.  28 U.S.C. § 455 clearly does not apply because Teskey is not a "justice, judge, or magistrate judge of the United States."  And, as Draper concedes, there is no Air Force regulation or other statute requiring Teskey to recuse himself from this matter.  ECF No. 42 at 84:9-10.  Despite the lack of a recusal statute or regulation, Draper contends that Teskey should have recused himself because of due process concerns.  Draper does not make much of an argument here; he relies on the fact that Teskey and Draper worked under the same commander at one point and that Teskey's decision "overturned a 4 to 1 decision of the OGD Board . . . ."  ECF No. 28 at 33-34.  Neither is sufficient to compel Teskey's recusal.

While Draper cites several cases for the legal propositions that he likes, he ignores the glaring factual distinctions between his case and those that make those cases inapposite.  For example, Draper relies upon W*illiams v. Pennsylvania*, 579 U.S. 1, 8 (2016), for the proposition that "[t]he Court asks not whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, the average judge in his position is likely to be neutral, or whether there is an unconstitutional potential for bias."  ECF No. 34 at 5-6.  The legal proposition is undisputed.  But the "unconstitutional potential for bias" in *Williams* arose from the fact that one of the state supreme court justices deciding Williams's appeal of his capital sentence was previously a prosecutor who made the decision to seek the death penalty *in Williams's case*.  *Id*. at 8.  This direct involvement in the case before the Court was the concern because it ran afoul of "[t]he due process guarantee that 'no man can be a judge of his own case.'"  *Id*. at 9.  This case raises nothing close to that concern.

The fact that Draper and Teskey worked for the same commander at some time before Draper's misconduct did not mandate Teskey's recusal.  Here, Draper speculates that "Teskey would have made assumptions and drawn conclusions about Col Draper during the time they served together in the JAG Corps, and competed with each other for promotions and assignments."  ECF No. 34 at 12.  From this, Draper asserts that it was "reasonable to assume" that Teskey was biased against him, which required Teskey to recuse himself.  *Id*. at 13.  The Court cannot agree that the simple fact that Teskey and Draper knew each other and served in the same command compelled Teskey's recusal.  At the time of Draper's misconduct, Teskey had retired from the Air Force and was working as a civilian in the Senior Executive Service.  *See* ECF No. 21 at 19 (citing Teskey's Air Force biography).  Indeed, Teskey left the Air Force three years *before* Draper's misconduct even happened.  *Id*.  At the time of Draper's NJP and LOR, Teskey was the Director of Air Force Small Business Programs at the Pentagon and was no longer working for General Morrow.  *Id*.  They were not competing for anything.  Nor is there any indication that Teskey was aware of Draper's misconduct or punishment prior to the OGD, much less had any involvement whatsoever with Draper's case prior to the OGD.  And at the time of the OGD, Teskey was no longer a subordinate of General Morrow or subject to her command.  AR 221-22.  Therefore, *Williams* does not help Draper establish that Teskey should have recused himself.

The same is true of Draper's reliance on *In re Al-Nishiri*, 921 F.3d 224 (D.C. Cir. 2019).  *See* ECF No. 34 at 6.  There the presiding judge in a military tribunal had applied for and accepted a position as an immigration judge, which is an attorney position within the Department of Justice.  *See In re Al-Nishiri*, 921 F.3d at 235.  The impartiality concern arose because the prosecutors in the case were Department of Justice attorneys and the judge's employment application to the Department clearly undermined at least the appearance of impartiality.  *Id*. at 237.  And the judge there also highlighted his role presiding over the *Al-Nishiri* case to the Department, but never mentioned it to Al-Nishiri.  *Id*.  As explained above, there is nothing similar here.  Teskey had retired from the Air Force and was in the Senior Executive Service at the time of Draper's misconduct.  At the time of the OGD, Teskey was the Director of the Air Force Review Boards Agency, a position that he still holds.  In other words, there is no indication that Teskey had any similar cloud of potential partiality over him when he made his OGD decision, and no reason to compel his recusal.

Similarly, Draper complains that Teskey, purportedly like the judge in *Al-Nishiri*, "never once mentioned that he personally knew Col Draper."  ECF No. 34 at 7.  So what?  Unlike any of the cases that Draper relies on for this alleged transgression, *i.e.*, *Al-Nishiri* and *United States v. Albaaj*, 65 M.J. 167 (C.A.A.F. 2007), there was no undisclosed relationship in this case.  In essence, Draper is complaining that Teskey did not alert Draper to the fact that Teskey and Draper knew each other and had previously served together.  This is information that was equally available to Draper as to Teskey.  And the simple fact that Teskey and Draper previously served together is insufficient to compel Teskey's recusal.

Finally, Draper makes a somewhat circular argument that the fact that Teskey "overruled a near-unanimous 4-1 [SAFPC] vote" to retire Draper as a Colonel shows Teskey's bias.  ECF No. 34 at 8.  Not so.  Under AFI 36-3203 (either the 2015 or 2021 version), Teskey was permitted to obtain "the review *and recommendation* of the SAFPC prior to making a determination of satisfactory service for an OGD . . . ."  AFI 36-3203 ¶ 8.6 (emphasis added);

*see also* AFI 36-3203 ¶ 7.6 (Sept. 18, 2015) (same).  The SAFPC decision was not binding on Teskey and he could disagree with it had he provided a reasoned explanation that found support in the record.  The fact that his explanation for doing so in this case does not comport with certain parts of the record does not indicate a bias sufficient to compel his recusal.  If that were the case, every time a decision lacked support in the record it would be grounds for the recusal of the decisionmaker.  That is not the law.

Draper has failed to come forward with a compelling reason that Teskey was required to recuse himself on this record.

## V.    Relief

Draper argues that the Court should set aside the AFBCMR's and Teskey's decisions and order the Air Force to follow the SAFPC's opinion because it was the only body to apply the AFR 36-3202 ¶ 8.6.2.2 factors to Draper's case.  ECF No. 28 at 43-44.  The Court cannot do so. As explained above, the Secretary did not delegate the OGD authority to the SAFPC, he delegated it to Teskey.  As the SecAF's delegate, Teskey sought and received the "recommendation" of the SAFPC.  That does not confer the SAFPC with the authority to make the final OGD determination.  Instead, the proper remedy is to set aside the AFBCMR's decision and remand this matter to the AFBCMR pursuant to RCFC 52.2 for further consideration in light of this opinion.

## VI.    Conclusion

For the reasons stated above, the Court:

1. Grants-in-part and denies-in-part the Government's motion for judgment on the administrative record, ECF No. 21;

2. Grants-in-part and denies-in-part Draper's cross-motion for judgment on the administrative record, ECF No. 28; and

3. Pursuant to RCFC 52.2, Remands this matter to the AFBCMR with the following instructions:

- The AFBCMR shall rescind its July 9, 2019 decision and issue a new decision on whether plaintiff, Randon H. Draper, is entitled to correction of his military records denied by the AFBCMR in its July 9, 2019 decision, taking into account the errors identified in this opinion.

- This remand shall not exceed 180 days, during which time this proceeding shall remain stayed.

- Pursuant to RCFC 52.2(b)(l)(D), defendant shall file a status report every ninety days indicating the status of the proceedings before the AFBCMR.

- The parties shall file a joint status report no later than seven days following the date defendant receives notice from the AFBCMR of the conclusion of the

remand proceeding.  The joint status report shall set forth the parties' positions regarding whether further litigation is necessary.  If the parties anticipate further litigation, they shall provide (1) a proposed date for defendant to file the administrative record associated with the remand proceedings, and (2) a proposed briefing schedule for any dispositive motions.

The Clerk is directed to serve this Opinion and Order on the Air Force Board for the Correction of Military Records at the following address:

Ms. Nicole D. Jackson, Executive Director
Air Force Board for the Correction of Military Records (SAF/MRBC) (AFBCMR)
3351 Celmers Lane
Joint Base Andrews, MD  20762-6604

IT IS SO ORDERED.

<u>s/ Edward H. Meyers</u>
Edward H. Meyers
Judge